UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RACHEL O. SMITH                          CIVIL ACTION NO. 05-1262

VERSUS                                   JUDGE HICKS

PROGRESSIVE STAMPING AND                 MAGISTRATE JUDGE HORNSBY
PLATING, INC. AND HARDWARE
RESOURCES, INC.

**MEMORANDUM RULING**

Plaintiff Rachel Smith ("Smith") filed the instant lawsuit against her former employer, Defendant Progressive Stamping and Plating, Inc. ("Progressive") for alleged employment discrimination under Title VII and the Pregnancy Discrimination Act.[1] Before the Court is Progressive's Second Motion for Partial Summary Judgment [Doc. No. 24] which seeks to have Smith's Title VII claims dismissed. Smith opposes the motion. For the reasons that follow, Progressive's motion is **GRANTED.**

**I.    RELEVANT FACTUAL BACKGROUND**

Smith worked for Progressive from September 18, 2003 until she was discharged on October 17, 2003.[2] [Doc. 24-4, Ex. A (Smith's EEOC Charge)]. In Paragraph 13 of Smith's complaint, she claims that during the month she was employed with Progressive, she was subjected to a "sexually offensive and hostile work place" in violation of Title VII. [Doc. No. 1 at ¶ 13 (Complaint)]. Progressive propounded an interrogatory to Smith which

---

[1] Smith's claims under Louisiana state anti-discrimination law have already been dismissed via summary judgment. See Doc. No. 23.

[2] Smith contends that she was terminated in violation of the Pregnancy Discrimination Act. However, that claim is not before the Court in the instant motion for partial summary judgment.

asked, among other things, for the "nature and details of each instance of the defendant's conduct, acts, or omissions" to which this paragraph of her Complaint referred. [Doc. No. 24-4, Exhibit B (Interrogatory No. 1)]. Smith objected to the interrogatory as overbroad, then answered as follows:

1. On one occasion, Plaintiff witnessed Mr. Lowe express that he wanted to hire "no fat bitches" or "no large women." This took place in Tammie Lowe's office. This took place while she was an accounts receivable clerk. Tammie Lowe was in her office at the time. This idea was reinforced by Tammie Lowe and Tracey Long.

2. On another time, while Plaintiff was HR Director was (sic) interviewing applicants for an Accounts Receivables Clerk, and was instructed by Tammie Lowe, that "You know what kind of person that Jeff wants in his office, so keep that in mind when you are interviewing." Meaning: that he doesn't want anyone that is too big working in his office. Plaintiff was also instructed that if Jeff came to her and asked for a "blond haired blue eyed woman, with big boobs," then she was to ask no questions, and to do as she was told. Tracey Long was present.

3. Plaintiff interviewed several people that had more than enough experience for the position. But because they were too large in size, she didn't even consider them for the position. Plaintiff knew what she was doing was wrong and immoral, but because she didn't want to lose her job, she did as she was told.

4. On October 13, 2003, owner Jeff Lowe, informed Plaintiff in a meeting along with Charlie Adams, Rick Dittmer, Tommy (LNU) and Peanut (nickname, real name unknown), that her job duties as Human Resources included hiring no niggers, only white boys and Mexicans. Jeff Lowe gave Plaintiff instructions on how to run an advertisement so as to exclude blacks from being hired.

5. Plaintiff was warned about Jeff Lowe's temper and that he might throw things and say things. Tracey Long warned her.

6. Plaintiff is under the belief that women were not hired in the plant or factory area.

7. Plaintiff is also under the belief that Jeff Lowe only hired attractive females.

8. Jeff Lowe cursed regularly in the work place.

9. Plaintiff was hired on September 18, 2003 as an Accounts Payable/Payroll Clerk. She had been in the position for several weeks when she was approached by Tracey Long and Tammie Lowe and was promoted to Human Resources Director. Plaintiff informed them that she was not qualified for this position but they assured her that she was what they were looking for. On October 15, 2003, Tracey Long told Plaintiff that she was doing an excellent job and that they were giving her a raise in pay. On Friday, October 17, at 8:00 a.m., Tracy Long terminated me (sic), per Jeff Lowe's orders, for not having been qualified for the position. Plaintiff told her that she had informed them of this when they promoted her. She said nothing in response. Plaintiff asked to be put back in the position that she had been hired for. She said the position was done away with. This is untrue. Accounts Payable and Payroll is not something that can be dissolved. Plaintiff was released due to being pregnant. She had worn a maternity shirt the prior work day.

10. When Plaintiff was hired on September 18, she worked directly for Tammie Lowe, in the accounting department. Plaintiff informed Mrs. Tammie Lowe that she was possibly pregnant. Plaintiff went to the doctor on September 24, and confirmed that she was pregnant. Plaintiff was promoted on October 8, and no longer worked for Tammie Lowe. She worked directly for Jeff Lowe. Plaintiff had not told Jeff Lowe. After being promoted and given a raise for good performance, Plaintiff was fired for not having enough qualifications for the position. Her replacement did not have to meet the qualifications. There was no restructuring.

11. Mr. Lowe required a copy of each applicant's driver's license with each application.

[Doc. No. 24-4, Ex. B].

After receiving Smith's sworn response to the above interrogatory, Progressive filed the instant motion for summary judgment.[3] Progressive's motion contends that Smith failed to exhaust her administrative resources concerning her Title VII claim and that there is insufficient evidence for a jury to return a verdict in Smith's favor.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the

---

[3] Curiously, Smith argues that without the Interrogatory (which she objected to as being overbroad), Progressive has "no factual basis to move for summary judgment at this early stage of the litigation." [Doc. No. 27]. However, a defendant need only point out that the plaintiff cannot meet her burden on an essential element. It is then up to the **plaintiff** to come forward with competent summary judgment evidence to the contrary. Smith filed a motion pursuant to FRCP 56(f) to continue the hearing on the instant motion for summary judgment, arguing that discovery was incomplete. However, that motion was denied. [Doc. No. 48]. Smith is the only person who can describe the conduct of which she complains. If the interrogatory answer were incomplete, all she had to do was file a supplementary affidavit in opposition to the motion for summary judgment or file a sworn supplemental response to the interrogatory and incorporate it with her opposition. She is the master of her claim. Discovery from third parties cannot expand her hostile environment claim to include conduct of which she has no knowledge.

moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant case.

**B.     The Standard for a Hostile Environment Claim.**

In order to establish a viable cause of action for sexual harassment based on a hostile work environment, Smith must prove that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; and (4) the harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or

pervasive to alter the conditions of employment and create an abusive working environment. <u>Watts v. Kroger Company</u>, 170 F.3d 505 (5th Cir. 1999). The conduct must be extreme to ensure that Title VII does not become a "general civility code." <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998); see also <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 118 S. Ct 998 (1998)(affirming that Title VII is not a general civility code and that challenged conduct, even if offensive, must constitute discrimination because of sex).

In order to succeed on her sexual harassment claim, Smith must show that she was subjected to a hostile work environment. In <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 114 S. Ct. 367 (1993), the Supreme Court considered all of the circumstances including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether it interferes with an employee's work performance in determining whether a hostile environment existed. The Harris Court went on to state that "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. Id. at 370. A hostile work environment can only be found when the workplace is "permeated" by the offensive conduct. Id. As the Fifth Circuit has noted: "claims of non-severe, non-pervasive harassment are excluded from Title VII. Motions for judgment as a matter of law can police the baseline for hostile environment claims." <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258 (5th Cir. 1999).

**C.   Plaintiff's Complaints.**

All of Smith's complaints, as stated in her Interrogatory Answer, are assumed true for purposes of the pending motion. The Court will consider each of her allegations,

paragraph by paragraph, to determine which ones complained of constitute conduct based on sex or gender.

Paragraph No. 4 (no blacks) is not relevant to Smith's gender-based complaint. Paragraph No. 5 (Lowe's temper) & No. 8 (Lowe's cursing) are likewise irrelevant, since the record is devoid of any evidence that Lowe's temper or cursing was directed exclusively at women. Paragraph No. 6 (Smith's belief that women were not hired in the plant/factory area) is not supportive of Smith's claim, since she does not claim that she was denied a position in those areas nor is there any evidence of any other females who applied and were rejected based on sex. Paragraph Nos. 9 & 10 are directed at Smith's pregnancy discrimination claim. They do not reference any harassment or hostile conduct. Paragraph No. 11 (requiring copies of applicants' driver's license) is irrelevant to Smith's gender-based claim. Accordingly, the Court is left with Paragraph Nos. 1, 2, 3 & 7, all of which concern Smith's complaint that Jeff Lowe only wanted attractive, non-overweight females considered for employment positions. Since these are Smith's only complaints that are even arguably gender-based, the Court will turn its attention to those claims.

Smith argues that a sexually hostile work environment can be made of derogatory remarks about women's role, place in society, pregnancy, etc. Smith argues that she felt "demeaned" as a woman by Jeff Lowe's direction to only hire attractive, non-overweight women. However, Smith's allegations show that Lowe did not discriminate against women in general, only "fat ugly women." Title VII protects only certain enumerated categories. Neither weight nor attractiveness is a protected category. See, e.g., Jones v. City of Mount Vernon, 114 F.Supp.2d 274 (S.D.N.Y.,2000)(failure to hire female applicant on ground that she was overweight did not constitute gender discrimination under Title VII). Further, there is no evidence that Smith was either overweight or unattractive. Indeed, the fact that she

was hired suggests that she was neither. That being the case, it is questionable whether Smith even has standing to complain.

Regardless, Smith argues that she was discriminated against (or more correctly, harassed) based on her gender. The Eighth Circuit has found complaints very similar to those advanced by Smith as not being probative of gender discrimination. In <u>Kriss v. Sprint Communications Co., Ltd. Partnership</u>, 58 F.3d 1276 (8th Cir. 1995), the court stated:

> Evidence of Miller's "evaluative comments" appear to be the following: (a) he stated that a high-ranking female manager was "ugly" (T. 265); (b) he stated that a woman in the office was a "bitch" (T. 265); and (c) he joked that he wanted to hire a sales representative away from a California Sprint office because she was attractive (T. 267). While these comments are rude, they do not furnish much proof of gender discrimination.

<u>Id.</u> at 1281. Likewise, this Court does not find Lowe's alleged comments to be indicative of gender bias.

Even assuming *arguendo* that the conduct of which Smith complains was based on gender, she still could not survive the instant motion for summary judgment because that conduct is neither severe nor pervasive. <u>See</u> <u>Septimus v. University of Houston</u>, 399 F.3d 601 (5th Cir. 2005). Indeed, much more egregious behavior has been held to be insufficient.[4] <u>See</u>, <u>e.g.</u>, <u>Shepherd v. Comptroller of Public Accounts of State of Texas</u>, 168 F.3d 871 (5th Cir. 1999).

---

[4]The Court notes that while it granted the Motion to Strike Terri Lawe's affidavit, even if it had considered Ms. Lawe's affidavit, it still would not have created a genuine issue of material fact. Accordingly, the granting of the Motion to Strike did not affect the outcome of the instant motion.

### III. CONCLUSION

For the foregoing reasons, the Court finds that there are no genuine issues of fact, and that summary judgment in favor of Progressive on Smith's hostile environment claims pursuant to Title VII is proper as a matter of fact and law.

Therefore,

**IT IS ORDERED** that Progressive's Second Motion for Partial Summary Judgment [Doc. No. 24] is hereby **GRANTED**, and that Smith's Title VII's claims are hereby **DISMISSED**, with prejudice, at her sole cost.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 7th day of July, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE